UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLA VITTI-CARLESIMO,

        Plaintiff,

v.

        Case No. 12-14902

        Honorable Patrick J. Duggan

BANK OF AMERICA, N.A., and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S REQUEST TO AMEND

Plaintiff Carla Vitti-Carlesimo commenced this residential mortgage foreclosure action against Defendants Bank of America, N.A. ("BANA") and Federal National Mortgage Association ("Fannie Mae") (collectively, "Defendants") on November 2, 2012, alleging a series of improprieties in the administration of her mortgage loan and the subsequent foreclosure of her home. Although Plaintiff originally alleged twenty-three state and federal law claims against Defendants, following Defendants' Motion to Dismiss, Plaintiff abandoned the majority of her claims. The following counts remain: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; (2) "Breach of Contract for Breach of the Implied Covenant of Good Faith and Fair Dealing"; (3)

"Breach of Contract/Wrongful Foreclosure"; (4) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b); and (5) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691.

Presently before the Court is Defendants' Motion to Dismiss which seeks dismissal of each count alleged in Plaintiff's Complaint. Plaintiff disputes that the five remaining claims are subject to dismissal but, in the event the Court grants Defendants' Motion, asks the Court to grant leave to file an amended complaint. Having determined that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons stated herein, the Court grants Defendants' Motion and denies Plaintiff's request for leave to amend.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A. Residential Mortgage Transaction**

On March 11, 2005, Plaintiff accepted a $228,000 loan from non-party America's Wholesale Lender ("AWL"), and, in exchange, executed a promissory note secured by a mortgage on real property commonly known as 30148 Piper's Lane Ct., Farmington Hills, Michigan 48334 (the "Property"). (Note, Defs.' Mot. Ex. A; Mortgage, Defs.' Mot. Ex. B.) The Mortgage was recorded with the Oakland County Register of Deeds on April 22, 2005, at Liber 35371, page 539. (Mortgage, Defs.' Mot. Ex. B.) The Mortgage designates Mortgage Electronic

Registration Systems, Inc. ("MERS") as mortgagee, "acting solely as nominee for [AWL] and [AWL]'s assigns." (*Id.*) On September 9, 2010, MERS executed an Assignment of Mortgage, assigning its interest in the Mortgage to BAC Home Loans Servicing, L.P. ("BAC"), the predecessor to BANA. (Assignment, Defs.' Mot. Ex. C.) This Assignment was recorded with the Oakland County Register of Deeds on September 20, 2010, at Liber 42381, page 573. (*Id.*)

**B.     Loan Modifications**

Plaintiff alleges that she entered into a permanent loan modification with BANA in March of 2009 but that "BANA unilaterally revoked the loan modification[]" even though "Plaintiff made four or five payments on time[.]"[1] (Compl. ¶¶ 15, 17.) In the "late summer of 2010," Plaintiff applied for another loan modification, which BANA ultimately approved and the first payment under this second modification was due on January 1, 2011. (*Id.* at ¶¶ 18-20.) Plaintiff alleges that after making her May 2011 payment, "BANA's representative called Plaintiff and told her that she had over-paid and that representative instructed Plaintiff to withhold the next payment." (*Id.* at ¶ 22.) "[A]t the end of June," "Plaintiff made the next payment . . ., which, even though it was past the grace period, would have cured any default." (*Id.* at ¶ 23.) BANA refused to accept

---

[1] It is unclear how Plaintiff could have entered into a modification with BANA, which did not acquire the Mortgage until 2011 upon merging with BAC. Moreover, BAC did not receive the assignment from MERS until September 2010.

3

Plaintiff's payment and "[t]he next thing Plaintiff knew, BANA unilaterally changed the terms of the second loan modification, raising Plaintiff's payment and adding more fees and costs." (*Id.* at ¶¶ 24-25.)

After Plaintiff defaulted on her obligations pursuant to the Note and Mortgage, BANA instituted foreclosure proceedings. The sheriff's sale was adjourned from February 21, 2012 until mid-May 2012. (Notices of Adjournment, Defs.' Mot. Ex. E.) At the May 15, 2012 sheriff's sale, BANA purchased the Property for $238,856.62. (Sheriff's Deed, Defs.' Mot. Ex. D.) BANA conveyed the Property to Fannie Mae on June 7, 2012 by way of a quit claim deed. (Quit Claim Deed, Defs.' Mot. Ex. F.)

## C. Plaintiff's Qualified Written Request

On August 24, 2012, Plaintiff sent a qualified written request ("QWR") to BANA. (Compl. ¶ 51.) This included Plaintiff's name, the loan number, and the address of the mortgaged Property. (*Id.*) The QWR included a statement indicating why Plaintiff believed her mortgage account contained an error and "requested in sufficient detail that the Defendant provide information so that Plaintiff could determine the exact nature of the disputed items." (*Id.*) Despite receiving a copy of the QWR, BANA "refused to lawfully and properly respond" and "continue[d] its foreclosure proceedings against the subject property." (*Id.* at ¶¶ 52, 54.) Further compounding the problems, BANA "failed to conduct a

4

necessary investigation into the disputes tendered by Plaintiff . . . and continued with its collection against Plaintiff . . . and subjected Plaintiff to additional illegal charges and fees." (*Id.* at ¶ 55.) Thus, Plaintiff "initiated a reinvestigation pursuant to 15 U.S.C. § 1681s-2(b) by sending letters by certified mail to one or more national credit reporting agencies disputing the reporting of the disputed information during the pendency of the [QWR]." (*Id*. at ¶ 56.) BANA failed to discontinue reporting credit information during this period. (*Id.* at ¶ 57.)

### D.     Plaintiff Institutes Legal Proceedings

On May 1, 2013, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) asking this Court to dismiss all twenty-three claims contained in Plaintiff's Complaint. In responding to this motion, Plaintiff agreed to dismiss Counts III – XIII, XV – XVII, and XIX – XXII. (Pl.'s Resp. 7.)

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows the Court to make an assessment as to whether Plaintiff's pleadings state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555–56, 570, 127 S. Ct. 1955, 1964–65, 1974 (2007), the Court must construe the complaint in favor of the plaintiff and

determine whether plaintiff's factual allegations present claims plausible on their face. This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claim(s). *Id.* at 557, 127 S. Ct. at 1965. Even though the complaint need not contain "detailed" factual allegations, the "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation omitted), courts must accept the factual allegations in the complaint as true. *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. The presumption of truth does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (2)) (internal citations omitted).  In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims.  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

**B.     Motion to Amend**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), leave to amend is "freely" granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The United States Supreme Court has advised that plaintiffs should be allowed the opportunity to test a claim on the merits if the facts and circumstances underlying the claim suggest that it may be a proper subject of relief.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).  However, a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.  *Id*.

7

### III. ANALYSIS

**A.  Motion to Dismiss**

While the majority of Plaintiff's claims against Defendants have been voluntarily dismissed, several remain. These are: (1) violation of the RESPA based on Defendants' failure to make corrections to Plaintiff's account and Defendants' failure to lawfully and properly respond to the qualified written request ("QWR") (Count I); (2) breach of contract based on Defendants' breach of the covenant of good faith and fair dealing (Count II); (3) breach of contract based on Defendants' wrongful foreclosure (Count XIV); (4) violation of the FCRA based on Defendants' failure to cease reporting derogatory information during the sixty-day reinvestigation period following receipt of the QWR; and (5) violation of the ECOA based on Defendants' failure to provide written notice explaining why Plaintiff's loan modification was denied (Count XXIV[2]).

*1.  Plaintiff's RESPA Claim (Count I)*

Plaintiff argues that Defendants violated the REPSA by failing to "lawfully and properly respond to" the QWR[3] Plaintiff sent to BANA. (Compl. ¶ 53.)

---

[2] "Count XXIV" is mislabeled as the Complaint contains no "Count XXIII."

[3] A QWR is a "written correspondence" that "includes, or otherwise enables the servicer to identify, the name and account of the borrower and [] includes a statement of the reasons for the belief of the borrower[] . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

Recognizing that the receipt of a QWR by a loan servicer triggers certain obligations, Plaintiff goes on to list the various ways Defendants failed to comply with the RESPA's obligations, specifically citing various provisions in 12 U.S.C. § 2605(e). (*Id.* at ¶¶ 67(a)-(d).) Because violations of 12 U.S.C. § 2605(e) give rise to damages pursuant to 12 U.S.C. § 2605(f), the Complaint states that "[a]s a result of these violations, the Plaintiff suffered damages of an economic and non-economic nature." (*Id.* at ¶ 68.)

Plaintiff's threadbare allegations fail to state a claim under the RESPA. As an initial matter, the RESPA applies to loan servicers. Plaintiff has not alleged that Fannie Mae serviced her mortgage loan. Fannie Mae's connection to the Property begins and ends with the June 7, 2012 Quit Claim Deed it received from BANA after the sheriff's sale.[4]

The RESPA claim also fails as to BANA because rather than alleging facts showing how BANA violated the RESPA, Plaintiff merely parrots the elements of a RESPA claim. Plaintiff alleges that she sent a QWR to BANA on August 24,

---

[4] Plaintiff argues that she has stated claims against Fannie Mae because (1) Fannie Mae "took assignment of a sheriff's deed" and therefore "took subject to all of the claims set forth herein against BANA[,]" and (2) "Plaintiff believes that there was also an agency relationship between [BANA and Fannie Mae] that could be alleged in an amended pleading after some amount of discovery." (Pl.'s Resp. 4.) In making this argument, Plaintiff conflates two distinct concepts. Fannie Mae did not receive an assignment of any contractual rights but rather received title to the Property by way of a quit claim deed. Moreover, Plaintiff's assertion of a belief regarding an agency relationship is insufficient to proceed to discovery.

9

2012, that BANA received the QWR (although, no date is provided), and that BANA failed to act in in accordance with the statute once it received the QWR. A complaint containing "a formulaic recitation of the elements of a cause of action" does not suffice to survive a motion to dismiss. *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quotation omitted).

Of greater consequence, at the time Plaintiff filed her Complaint on November 2, 2012, it was legally impossible for BANA to have violated the RESPA. At the time Plaintiff sent her QWR to BANA, loan servicers had "60 days (excluding legal public holidays, Saturdays and Sundays)" from receipt of the QWR to respond. 12 U.S.C. § 2605(e)(2).[5] Plaintiff mailed the QWR to BANA on August 24, 2012. BANA received the QWR but Plaintiff does not indicate when, and as such, the Court assumes that BANA received the QWR three days after it was mailed, *see* Federal Rule of Civil Procedure 6(d), making August 28, 2012 the first day of the sixty-day response period. Sixty days (excluding legal public holidays, Saturdays and Sundays) from August 28, 2012 was November 21, 2012,[6] more than two weeks after Plaintiff filed this lawsuit.

---

[5] Section 1463(c) of the Dodd-Frank Act amended the RESPA, shortening the time for loan servicers to respond to a QWR from sixty to thirty days. This amendment became effective on January 21, 2013, well after Plaintiff's QWR.

[6] Labor Day and Columbus Day, both legal public holidays, fell within this period, occurring September 3, 2012 and October 8, 2012 respectively. Fed. R. Civ. P. 6(a)(6)(A) (defining legal holiday).

Third, and lastly, even assuming BANA received the QWR and failed to respond as required, Plaintiff has not explained how the purported RESPA violation caused the damages she seeks. *See Mekani v. Homecomings Fin., L.L.C.*, 752 F. Supp. 2d 785, 795-96 (E.D. Mich. 2010) (noting that plaintiffs must establish causation between the RESPA violation and the damages claimed); *see also Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 898 (E.D. Mich. 2011) ("A claim for relief based upon a purported failure to respond to a QWR must be dismissed when the plaintiff fails to show damages resulting from the purported failure to respond.") (citing *Battah v. ResMAE Mortgage Corp.*, 746 F. Supp. 2d 869, 876 (E.D. Mich. 2010)). Plaintiff offers only a threadbare assertion that she "suffered damages of an economic and non-economic nature" as a result of BANA's failure to respond to her QWR. (Compl. ¶ 68.) While Plaintiff alleges that BANA improperly imposed fees and costs, these existed prior to Plaintiff's QWR and therefore, the failure to respond to the QWR cannot be said to have caused Plaintiff's damages.[7] (*Id*. at ¶ 25.)

---

[7] Plaintiff's Response "directs the Court's attention" to paragraph eighty-eight of the Complaint, "which specifically alleges that the Plaintiff suffered damages as a result of the failure to follow . . . the RESPA statute." (Pl.'s Resp. 6.) Paragraph eighty-eight provides: "The actions of [BANA] were intentional, reckless, malicious and intended to cause harm to Plaintiff." (Compl. ¶ 88.) These allegations, situated under "Count III – Defamation of Title," a count that Plaintiff voluntarily dismissed, are wholly unrelated to the RESPA claim.

11

Plaintiff requests leave to amend so that Plaintiff may attach a copy of the QWR to the amended complaint, along with proof that BANA received it. (Pl.'s Resp. 6.) However, because no RESPA violation could have occurred at the time Plaintiff filed this action, this requested amendment is denied on grounds of futility. *Foman*, 371 U.S. at 182, 83 S. Ct. at 230 (1962) (holding that a request to amend may be denied if the amendment would be futile).

For the reasons above, Plaintiff's RESPA claim (Count I) is dismissed with prejudice for failure to state a claim upon which relief may be granted.

2. *Plaintiff's Breach of Contract Claims (Counts II and XIV)*

In Count II, Plaintiff alleges that BANA breached its contract – the Note and Mortgage – with Plaintiff by virtue of failing to perform its duty of good faith and fair dealing. (Compl. ¶ 75.) This breach is evidenced by BANA's "fail[ure] to correctly apply payments, thereby causing excessive fees to accrue[,]" by BANA telling Plaintiff that she "qualified for a loan modification" while simultaneously "seeking foreclosure[,]" and by "failing to provide notice under the Michigan foreclosure statute."[8] (*Id.* at ¶¶ 72-74.) Plaintiff now "concedes that no independent cause of action arises for breach of an implied duty under Michigan law[.]" (Pl.'s Resp. 8.); *see Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App.

---

[8] All counts related to Defendants' purported breach of Michigan's foreclosure by advertisement statute have been voluntarily dismissed by Plaintiff.

12

11, 35, 718 N.W.2d 827, 841 (2006) (citing *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 476, 666 N.W.2d 271, 279(2003)). Despite this concession, Plaintiff requests leave to amend Count II "to encompass a breach of contract arising out of the failure to honor the express terms [] as modified, in writing, by the second, permanent loan modification." (Pl.'s Resp. 8.) Because Count II does not state a valid claim under the laws of the State of Michigan, the Court dismisses Count II with prejudice and denies Plaintiff's request to amend.

Plaintiff's Count XIV, entitled "Breach of Contract/Wrongful Foreclosure," also fails to state a claim. The Complaint alleges that Defendants[9] breached the contract by (1) "causing a breach when it wrongly attributed to Plaintiff in order to pressure Plaintiff into paying unnecessary and unwarranted fees and costs"; (2) "imposing unnecessary fees and costs upon Plaintiff"; (3) "repeatedly misstating the amount due under Plaintiff['s] loan"; (4) "requesting specific forms of action on the part of Plaintiff and then claiming that the course of conduct of Plaintiff justified default under the mortgage and foreclosure upon the home"; (5) "wrongfully foreclosing on the property of the Plaintiff"; (6) "refusing to perform in good faith"; (7) "willfully misstating the payment history to credit reporting agencies so as to disable Plaintiff from refinancing." (Compl. ¶¶ 161(a)-(g).)

---

[9] Although Count XIV is made against both Defendants, the Complaint does not allege that Fannie Mae ever entered into a contract with Plaintiff.

13

To state a cause of action for a breach of contract in Michigan, a plaintiff must (1) demonstrate the existence of a valid contract, (2) establish the contract's terms, (3) present evidence of a breach of those terms, and (4) show an injury causally related to that breach. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999). Plaintiff's Complaint does not specify what contract was allegedly breached. In responding to Defendants' Motion, however, Plaintiff identifies the second loan modification agreement as the pertinent contract. (Pl.'s Br. 8.) What Plaintiff's Response does not do is establish the terms of that contract or how the allegations demonstrate a breach of that contract. Plaintiff has therefore not stated a claim for a breach of contract.[10]

As with Count II, *supra*, Plaintiff requests leave to amend Count XIV. (Pl.'s Br. 8.) The Court denies this request as futile. As Defendant argues, "[t]he general rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Flamm v. Scherer,* 40 Mich. App. 1, 8-9, 198 N.W.2d 702, 705-06 (1972). Plaintiff's failure to remit timely payment under the second loan modification agreement constitutes a breach of that agreement thereby preventing

---

[10] With respect to the "Wrongful Foreclosure" component of Count XIV, "Michigan law does not recognize a separate cause of action for 'wrongful foreclosure.'" *Greene v. Citimortgage, Inc.*, No. 08-13199, 2009 U.S. Dist. LEXIS 44334, at *2 (E.D. Mich. May 27, 2009) (O'Meara, J.).

14

Plaintiff from recovering from Defendants for any breach that allegedly occurred afterward. (Compl. ¶¶ 22-23.)

Accordingly, the Court dismisses Counts II and XIV with prejudice.

3.    *Plaintiff's FCRA Claim (Count XVIII)*

Plaintiff argues that BANA[11] violated the Fair Credit Reporting Act ("FCRA") by failing to respond to Plaintiff's request for reinvestigation, failing "to cease reporting the derogatory credit information during the pendency of the period of 60 days following receipt of the qualified written request[,]" continuing to report the adverse credit information following its reinvestigation, "fail[ing] to notify the consumer reporting agencies to whom it reported credit information that the debt was disputed[,]" and by either willfully or negligently failing to put procedures in place to adequately investigate credit reports. (Compl. ¶¶ 176-86.)

The FCRA delineates the obligations of entities that furnish information to credit reporting agencies ("CRA"). 15 U.S.C. § 1681s-2(b). While BANA meets the definition of a "furnisher of information" subject to the FCRA, the duties imposed upon furnishers of information do not arise until the furnisher receives notice directly from a CRA that a borrower has disputed the veracity of information reported by the furnisher. *Id.*; *Yaldu v. Bank of Am. Corp.*, 700 F.

---

[11] As with the prior counts, this count is asserted against both BANA and Fannie Mae. As with each prior count, Plaintiff asserts no facts connecting Fannie Mae to the purportedly unlawful actions.

Supp. 2d 832, 843 (E.D. Mich. 2010) (observing that "a furnisher of credit information . . . has no responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency") (quotation omitted); *Kovacs v. JPMorgan Chase & Co.*, No. 09-10862, 2010 U.S. Dist. LEXIS 4138, at * 8-9 (E.D. Mich. Jan. 20, 2010) (explaining that a consumer may not directly send a complaint to the furnisher of information (e.g., a loan servicer) to establish a FCRA violation because the statute requires that the furnisher receive notice of the dispute from a CRA).

Here, Plaintiff alleges that she "initiated a reinvestigation pursuant to 15 U.S.C. § 1681s-2(b) by sending letters by certified mail" to at least one CRA disputing the information furnished by BANA. (Compl. ¶¶ 56, 177.) Plaintiff does not, however, allege that BANA received notice of this dispute from any CRA. This is fatal to Plaintiff's FRCA claim and Count XVII is therefore dismissed with prejudice.

4. *Plaintiff's ECOA Claim (Count XXIV)*

In her last remaining count, Plaintiff alleges that Defendants[12] violated the Equal Credit Opportunity Act ("ECOA") by failing to provide Plaintiff with a written statement notifying her of the reasons BANA denied her application for a second loan modification. (Compl. ¶¶ 208-10.)

---

[12] Once more, Plaintiff makes no allegations regarding Fannie Mae's involvement in Count XXIV.

The ECOA prohibits "any creditor" from "discriminat[ing] against any applicant, with respect to any aspect of a credit transaction[,]" and delineates various classes of protected persons. 15 U.S.C. § 1691(a). Creditors may not discriminate against applicants (1) on the basis of color, religion, national origin, sex or marital status, or age[]; (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under the Consumer Protection Act . *Id.* at § 1691(a)(1)-(3). Plaintiff has not alleged that this statute applies in this case because she has not alleged that BANA discriminated against her due to membership in a protected class.

Moreover, even if the ECOA did apply, which it does not, Plaintiff's allegation that BANA violated the ECOA by failing to provide a "written statement of the reasons for not granting the modification[,]" (Compl. ¶ 10), makes little sense in light of the fact that Plaintiff alleges that BANA granted Plaintiff's request for a second loan modification, (*id.* at ¶ 19), and the fact that Plaintiff's breach of contract claim, *supra*, is based on BANA's alleged breach of the second loan modification agreement. BANA was under no obligation to provide Plaintiff with a written notification regarding the denial of an application for a loan modification which had in fact been granted.

17

Plaintiff fails to state a viable claim under the ECOA. As such, the Court dismisses Count XXIV with prejudice.

**B.     Request to Amend**

As discussed throughout this Opinion and Order, Plaintiff seeks leave to amend so as to remedy any pleading deficiencies.[13] (Pl.'s Resp. 9-10.) Having addressed Plaintiff's specific requests to amend where applicable, the Court takes this opportunity to once again indicate that any amendment would be futile.

The Court also takes this opportunity to point out that Plaintiff's counsel has filed complaints similarly lacking in factual detail in the Eastern District of Michigan before. Some of these complaints are currently pending.[14] *See, e.g.*, *Fluegge v. Nationstar Mortgage, L.L.C.*, No. 12-15500; *Pintoski v. CitiMortgage, Inc.*, No. 13-10041. Others have been adjudicated. The Court notes that Judge Edmunds recently dismissed a nearly identical complaint filed by Plaintiff's counsel and similarly rejected counsel's request to amend raised in response to the

---

[13] Plaintiff has not filed a motion to amend pursuant to Eastern District of Michigan Local Rule 15.1 but rather made the request in responding to Defendants' Motion to Dismiss.

[14] The Court is not expressing any opinion on the merits of these complaints but is merely cautioning counsel that the repeated filing of cookie-cutter complaints may constitute professional misconduct. *See, e.g.*, *Landis v. Fannie Mae*, --- F. Supp. 2d. ---, No. 12-11996, 2013 U.S. Dist. LEXIS 17075, E.D. Mich. Feb. 8, 2013) (Rosen, J.) (sanctioning attorney for filing frivolous "boiler-plate" pleadings in cases challenge residential mortgage foreclosures).

defendant's motion to dismiss. *Clark v. Bank of Am., N.A.*, No. 12-13034, 2013 U.S. Dist. LEXIS 85135 (E.D. Mich. June 18, 2013) (Edmunds, J.).[15]

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend is **DENIED**.

Date: July 25, 2013

                                     s/PATRICK J. DUGGAN
                                     UNITED STATES DISTRICT JUDGE

Copies to:
**Adam G. Taub, Esq.
Amy Sabbota Gottlieb**

---

[15] In *Clark*, the complaint filed by Plaintiff's counsel contained twenty-three separate causes of action related to the defendant bank's foreclosure of the plaintiff's home. *Clark v. Bank of Am., N.A.*, No. 12-13034, 2013 U.S. Dist. LEXIS 85135, at *1 (E.D. Mich. June 18, 2013). Following the defendant's motion to dismiss, Plaintiff's counsel voluntarily dismissed sixteen of the twenty-three counts, leaving the following counts: (1) violation of the RESPA; (2) violation of Michigan's foreclosure by advertisement statute; (3) request for equitable, declaratory, or injunctive relief; (4) breach of contract; (5) violation of the FCRA; and (6) violation of the ECOA. A comparison of the allegations in *Clark* Complaint to the complaint filed in this case reveals a striking similarity; in fact, the allegations within five of the six remaining *Clark* claims are identical to the allegations set forth in Plaintiff's Complaint.